AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
        I-Phone (White) )
        Model: iPhone 12 )
      IMEI: 356065543735036 )

Case No. 22-mj-08830-LR

**FILED**
Dec 15 2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ carolinal    DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Moncerad Soto
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
    telephone     *(specify reliable electronic means)*.

Date:    12/15/2022

*Judge's signature*

City and state:    El Centro, California    HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**   I-Phone (White)
Model: iPhone 12
IMEI: 356065543735036
Seized from Daniel Silviano VELASCO
**(Target Device #2)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 12, 2022, up to and including July 12, 2022, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Moncerad Soto, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**      Apple iPhone (Black)
Model: iPhone 11
IMEI: 353984105245409
Seized from Manuel RUIZ Jr.
**(Target Device #1)**

**A-2:**      I-Phone (White)
Model: iPhone 12
IMEI: 356065543735036
Seized from Daniel Silviano VELASCO
**(Target Device #2)**

**A-3:**      OnePlus Smartphone (Blue)
Model: Unknown
FCC ID: 2ABZ2-EF164
Seized from Sebastian CAMPOS-Rojas
**(Target Device #3)**

**A-4:**      Samsung Smartphone (White)
Model: Unknown
IMEI: 352630/11/583236/0
Seized from Marta Laura SANCHEZ-Gonzalez
**(Target Device #4) (collectively "the Target Devices")**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Manuel RUIZ Jr. (RUIZ) and Daniel Silviano VELASCO (VELASCO) for transportation of illegal aliens Marta Laura SANCHEZ-Gonzalez and Sebastian CAMPOS-Rojas (collectively, the

"Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from RUIZ, VELASCO, SANCHEZ and CAMPOS on or about July 11, 2022, incident to the arrests of RUIZ and VELASCO. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2016, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

  a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

  c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

  d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 11, 2022, BPAs assigned to the El Centro Sector Intelligence Unit's Field Intelligence Team (FIT) were conducting surveillance in Calexico, California. The FIT wears plain clothes and drives unmarked Service vehicles in order to blend in with the general public. FIT conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley. On this date, at approximately 7:40 p.m., BPA G. Cigarroa received an alert related to a previous "Be On The Lookout" (BOLO) on his government issued phone for a white Jeep Grand Cherokee (Jeep) bearing Baja California, Mexico, license plates. The BOLO was created by BPA G. Cigarroa on May 18, 2022 after FIT Agents observed this Jeep acting as a scout for a vehicle that was seized during an alien smuggling incident.

11. After receiving the alert that informed BPA G. Cigarroa that the Jeep was on Interstate 8 travelling eastbound towards Yuma, Arizona, BPA G. Cigarroa informed additional FIT Agents of the BOLO. FIT Agents strategically positioned themselves on Interstate 8 and began observing traffic in order to intercept the Jeep for further investigation. While observing traffic at the rest area on Interstate 8, located west of the Greys Well Exit, BPA A. Botello observed the Jeep pass his location. BPA Botello relayed this information to additional FIT Agents. BPA Botello observed the Jeep enter the rest area from the westbound lanes and informed additional FIT Agents of his observation. FIT Agents set up a perimeter in order to conduct static surveillance on the Jeep.

12. After the Jeep parked, BPA Botello watched the driver exit the Jeep, walk to a white Honda Accord (Honda) bearing California license plates, and enter the front passenger side of the Honda. BPA Botello continued static surveillance on both the Jeep and the Honda while both the driver of the Honda and driver of the Jeep remained in the Honda conversing. After conversing, the driver of the Jeep was observed exiting the Honda

and returning to the Jeep. At this time, due to their previous encounter with the Jeep, FIT Agents believed that the Honda was in the area to pick up illegal aliens and the Jeep was working with the Honda acting as a scout to make sure there were not any Border Patrol Agents around or behind the Honda when it was time to pick up illegal aliens in the area.

13. At approximately 8:44 p.m., Remote Video Surveillance Systems (RVSS) operators observed two suspected illegal aliens approaching Interstate 8 from the desert approximately one and a half miles west of the rest area and communicated this observation to agents in the area. BPA M. Clinton advised Calexico Agents via service radio that a white Jeep and a white Honda were staged at the rest area and may be there to pick up the pair of aliens. As the suspected illegal aliens ran to Interstate 8, crossed the east and westbound lanes of Interstate, and hid on the northside of the westbound lanes of Interstate 8, BPA D. Amparan observed both the Jeep and Honda exit the rest area and proceed to travel westbound on Interstate 8. At this time, FIT Agents were coordinating with RVSS and radio dispatch who had constant visual on the area where the suspected illegal aliens were hiding.

14. As the Honda approached the area with the Jeep travelling behind it, RVSS operators observed both the Jeep and Honda pull over and come to a complete stop on the side of the Interstate. As the Honda stopped, both suspected illegal aliens ran to the Honda and entered the Honda. After the suspected illegal aliens entered the Honda, both the Honda and the Jeep quickly merged back onto the westbound lanes of Interstate 8. RVSS operators broadcasted their observation and BPA M. Clinton positioned his unmarked service vehicle between the Honda and the Jeep. BPA M. Clinton then activated the emergency lights and sirens of his unmarked service vehicle in an attempt to conduct a vehicle stop on the Honda and perform an immigration inspection on all individuals within the Honda. Simultaneously, BPA A. Faccin positioned his fully marked Border Patrol service vehicle behind the Jeep and activated the emergency lights and sirens of his service vehicle in order to conduct a vehicle stop on the Jeep and investigate the subject's involvement in this suspected alien smuggling scheme.

15. As BPAs continued to pursue the Honda with the emergency lights and sirens activated, it became evident that the Honda was failing to yield as it increased the speed at which it was travelling to over one hundred miles per hour and pulled away from BPA M. Clinton's unmarked service vehicle. It should be noted that at this time, a Customs and Border Protection helicopter (Troy) was also flying over the area, observing the pursuit, communicating with the pursuing Agents, and relaying the Honda's location. As the Honda increased its speed and continued to evade FIT Agents and Calexico Border Patrol Agents, BPA A. Faccin pulled away from the Jeep and joined in the pursuit of the Honda. As BPA A. Faccin passed the Jeep to catch up to the Honda, Border Patrol Agent (BPA) R. Dufort assumed the primary pursuit position for the Jeep. Troy kept constant visual on the Honda as FIT Agents and Calexico Border Patrol Agents continued pursuing the Honda westbound on Interstate. The Honda continued to evade all Agents and fail to yield to the lights and sirens of all service vehicles that were pursuing it. As the Honda reached the Highway 98 Exit, the Honda exited Interstate 8, merged onto Old Highway 80, and continued travelling westbound. While travelling westbound on Old Highway 80, Troy watched as the Honda slowed down and came to a complete stop. The two suspected illegal aliens exited the Honda and attempted to abscond from the area.

16. Troy was able to keep constant visual on the subjects and guide BPA A. Faccin to their location. BPA A. Faccin approached the subjects, identified himself as a Border Patrol Agent, and questioned them as to their citizenship. The subjects identified as Marta Laura SANCHEZ-Gonzalez (SANCHEZ) and Sebastian CAMPOS-Rojas (CAMPOS), admitted to being in the United States illegally. Marta Laura SANCHEZ-Gonzalez (SANCHEZ) and Sebastian CAMPOS-Rojas (CAMPOS) admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. They were not give-ups and attempted to evade capture and elude inspection. SANCHEZ and CAMPOS were placed under arrest for 8 USC 1325 Illegal Entry. During this time, BPA M. Clinton and BPA D. Amparan continued pursuing the Honda while BPA R. Dufort continued pursuing the Jeep.

17. The Honda continued travelling westbound at a high rate of speed and ignoring the emergency lights and sirens of the Border Patrol service vehicles pursuing it. BPA J. Bourque positioned himself at the intersection of Old Highway 80 and Highway 115 and notified the pursuing Agents that he would be there with a Vehicle Immobilization Device (VID). As the Honda approached the area, BPA J. Bourque deployed the VID and the front driver side tire as well as the rear driver side tire were successfully immobilized. After successfully immobilizing the tires of the Honda, the Honda pulled over to the side of the road and came to a complete stop. After coming to a complete stop, BPA M. Clinton and BPA D. Amparan approached the driver, later identified as Daniel Silviano VELASCO, with Border Patrol markings and insignia fully visible. Both BPA M. Clinton and BPA D. Amparan identified themselves as Border Patrol Agents and placed VELASCO under arrest for 8 USC 1324 Alien Smuggling.

18. While VELASCO was being placed under arrest, BPA R. Dufort was still in pursuit of the Jeep, which was continuing to fail to yield to the emergency lights and sirens of BPA R. Dufort's unmarked service vehicle in the westbound lanes of Interstate 8. As the Jeep continued travelling westbound at a normal rate of speed, BPA L. Heipt positioned himself in the westbound lanes of Interstate 8 east of mile marker 60 and notified BPA R. Dufort that he would be there with a Vehicle Immobilization Device (VID). As the Jeep approached the area, BPA L. Heipt deployed the VID and the front driver side tire as well as the front passenger tire and rear passenger side tire were successfully immobilized.

19. After successfully immobilizing the tires of the Jeep, the Jeep pulled over to the side of the road and came to a complete stop. After coming to a complete stop, BPA R. Dufort approached the driver, later identified as Manuel RUIZ, with Border Patrol markings and insignia fully visible, identified himself as a Border Patrol Agent, and placed RUIZ under arrest for his involvement in this alien smuggling scheme. RUIZ and VELASCO, were placed under arrest and transported to the Calexico Border Patrol Station for further investigation and processing.

20. During an inventory search of the Jeep conducted by BPA Dufort, Target Device #1, a black Apple iPhone 11, was found in the cup holder of the Jeep RUIZ was driving. Target Device #1 was seized as evidence. In a search incident to the arrest of VELASCO, Border Patrol Agents found Target Device #2, a white iPhone 12, on his person. Target Device #2 was seized as evidence. In a search incident to the arrest of CAMPOS, Border Patrol Agents found Target Device #3, blue OnePlus smart phone, on his person. Target Device #3 was seized as evidence. In a search incident to the arrest of SANCHEZ, Border Patrol Agents found Target Device #4, white Samsung smart phone, on her person. Target Device #4 was seized as evidence.

21. VELASCO was advised of his Miranda rights, acknowledged his rights, and agreed to speak with agents without the presence of an attorney. VELASCO stated he responded to a Facebook advertisement looking for people to smuggle drugs or aliens. VELASCO said he didn't want to smuggle drugs, so he decided to smuggle aliens. VELASCO said the job pays $500 per alien smuggled and this is his second time doing this. VELASCO stated that he previously picked up aliens in the desert east of Calexico and delivered them to a trailer in Calexico, California, on N. Imperial Avenue. VELASCO said on today's date, he and his cousin, Manuel RUIZ, drove out to the desert to pick up illegal aliens. RUIZ was acting as a lookout while VELASCO picked up the aliens. VELASCO said when Border Patrol Agents tried to pull him over, he fled at high speeds trying to get away.

22. RUIZ was advised of his Miranda rights, acknowledged his rights, and agreed to speak with agents without the presence of an attorney. RUIZ stated that he was born in Brawley, California. RUIZ stated that his friend "Daniel" put him in touch with an unknown person who offered him $200 to act as a lookout. RUIZ said he wasn't sure what was happening, but once his friend picked up illegal aliens, he knew what they were doing was alien smuggling. RUIZ stated that after his friend picked up the illegal aliens, he noticed that Border Patrol was trying to pull him over with lights and sirens. RUIZ said

that since he didn't pick up any illegal aliens, he thought that that the Border Patrol would eventually just stop chasing him, so he didn't pull over.

23. Marta Laura SANCHEZ-Gonzalez (SANCHEZ) stated she is a citizen of Mexico and that both her parents are citizens of Mexico. SANCHEZ stated that she made smuggling arrangements with a smuggler to be smuggled to San Rafael, California, for $7,100 USD. SANCHEZ was presented with DHS form 378 A-1 photo lineup and was asked if she could recognize anyone. SANCHEZ was not able to recognize anyone from the photo lineup.

24. Sebastian CAMPOS-Rojas (CAMPOS) stated he was born in Mexico. CAMPOS stated that he was to pay $10,500 USD to be illegally smuggled into the United States. CAMPOS stated that he illegally entered the United States tonight by climbing over the wall near Mexicali. CAMPOS was presented with DHS form 378 A-1 photo lineup and was asked if he could recognize anyone. CAMPOS was not able to recognize anyone from the photo lineup.

25. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on June 12, 2022, up to and including July 12, 2022, the day after the arrests of RUIZ, VELASCO, SANCHEZ and CAMPOS.

## METHODOLOGY

26. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and

can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//

## CONCLUSION

29. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that RUIZ, VELASCO, SANCHEZ and CAMPOS used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by RUIZ and VELASCO, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Moncerad Soto, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of December, 2022.

_____ 3:25 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    Apple iPhone (Black)
Model: iPhone 11
IMEI: 353984105245409
Seized from Manuel RUIZ Jr.
**(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**           I-Phone (White)
                Model: iPhone 12
                IMEI: 356065543735036
                Seized from Daniel Silviano VELASCO
                **(Target Device #2)**




The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:** OnePlus Smartphone (Blue)
Model: Unknown
FCC ID: 2ABZ2-EF164
Seized from Sebastian CAMPOS-Rojas
**(Target Device #3)**



The **Target Device** is are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**  Samsung Smartphone (White)
Model: Unknown
IMEI: 352630/11/583236/0
Seized from Marta Laura SANCHEZ-Gonzalez
**(Target Device #4)**




The **Target Device** is are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 12, 2022, up to and including July 12, 2022, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.